UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHENGHONG XIE,<br><br>                               Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, in his official capacity as Warden of Otay Mesa Detention Center, et al.,<br><br>                               Respondents. | Case No.:  3:26-cv-01116-RBM-MMP<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Doc. 1]** |

Pending before the Court is Petitioner Chenghong Xie's ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition").  (Doc. 1.)  For the reasons set forth below, the Court **GRANTS** the Petition.

## I.      BACKGROUND

**A.      Factual Background**

Petitioner, a citizen of China, entered the United States on December 13, 2024. (Doc. 4 at 4 (citing Doc. 4-1 at 2, 7).)  He was immediately apprehended by Customs and Border Patrol, determined to be inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), and taken into Immigration and Customs Enforcement ("ICE") custody pursuant to 8 U.S.C. § 1225(b).  (*Id.*)  He was initially processed for expedited removal, but was issued a Notice to Appear on January 31, 2025, which initiated full removal proceedings.  (*Id.* at 4–5.)

1

Petitioner's initial master calendar hearing was set for February 18, 2025. (*Id.* at 5 (citing Doc. 4-1 at 9).) Petitioner obtained five continuances to prepare or otherwise perfect his applications for relief. (*Id.*) Petitioner's individual merits hearing was set for November 24, 2025, but "there appears to have been delay due to the scheduling of a priority case" on that date. (*Id.*) Petitioner had another master calendar hearing on December 4, 2025, where the immigration judge continued Petitioner's merits hearing to April 22, 2026. (*Id.*)

**B.      Procedural Background**

Petitioner filed his Petition on February 20, 2026. (Doc. 1.) The Court set a briefing schedule shortly thereafter. (Doc. 2.) Respondents filed their Return to Petition for Writ of Habeas Corpus ("Response") on March 2, 2026. (Doc. 4.) Petitioner filed his Traverse to Government Return ("Reply") on March 6, 2026. (Doc. 5.) In the Reply, Petitioner noted that he had been transferred from Otay Mesa Detention Center (in the Southern District of California) to California City Detention Facility (in the Eastern District of California). (*Id.* at 7.) The Court then ordered further briefing regarding whether it still had jurisdiction and venue was still appropriate. (Doc. 6.)

The Parties filed a Joint Status Report on March 25, 2026, agreeing that Petitioner's transfer does not impact the Court's jurisdiction. (Doc. 7.) The Court agrees. *See Johnson v. Gill*, 883 F.3d 756, 761 (9th Cir. 2018) (explaining that, despite a transfer of custody, "habeas jurisdiction was proper in the district court [where the petitioner was originally detained] because [the petitioner] filed his petition while incarcerated [in that district]") (citing *Brown v. United States*, 610 F.2d 672, 677 (9th Cir. 1980)).

## II.      <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may

3:26-cv-01116-RBM-MMP

be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

### III.    DISCUSSION

The Parties agree that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). (*See* Doc. 1 ¶ 33; Doc. 4 at 8.) Accordingly, the issue before the Court is whether, under the circumstances of this case, applying the mandatory detention provisions of § 1225(b) violates Petitioner's due process rights. Petitioner argues that, even though he is mandatorily detained, such detention violates the Due Process Clause when it becomes unreasonably prolonged. (Doc. 1 at 19–23; Doc. 5 at 2–7.) Respondents argue that Petitioner's detention is mandated by § 1225(b) until the conclusion of his removal proceedings, and that "[e]ven if the Court infers a constitutional right against prolonged mandatory detention, Petitioner's claim still fails." (Doc. 4 at 8–18.)[1] The Court agrees with Petitioner that an unreasonably prolonged detention without a bond hearing violates due process, and that Petitioner's detention has become unreasonably prolonged.

**A.    Due Process**

Respondents argue that "inadmissible arriving noncitizens seeking initial entry into the United States . . . have no due process rights 'other than those afforded by statute.'" (Doc. 4 at 10 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).)

---

[1] Respondents also argue that the Court lacks jurisdiction to hear the Petition under 8 U.S.C. § 1252(g). (Doc. 4 at 6–7.) The Court has consistently rejected this argument, *see Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1161–62 (S.D. Cal. 2025), and does so again here for the same reasons. Petitioner challenges his detention as unreasonably prolonged under the Fifth Amendment. (Doc. 5 at 2.) He is thus enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025) (emphasis in original).

3:26-cv-01116-RBM-MMP

"Following the Supreme Court's decision in *Thuraissigiam*, some district courts have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b)(1)." *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1110 (S.D. Cal. 2025); *see Mendoza-Linares v. Garland*, Case No.: 21-cv-1169-BEN (AHG), 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024) ("Petitioner has no Fifth Amendment right to a bond hearing pending his removal proceedings."); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021) (same); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 667 (S.D. Tex. 2021) (same).

"Most courts have ruled otherwise." *Gao*, 805 F. Supp. 3d at 1110 (collecting cases); *accord Abdul-Samed v. Warden of Golden State Annex Det. Facility*, Case No. 1:25-cv-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for citizens detained under 8 U.S.C. § 1225(b), . . . essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process."); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever."). The Court thus "joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020).

Respondents also argue that *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), establishes that arriving noncitizens subject to a mandatory detention scheme, regardless of the length of their detention, never become entitled by the Due Process Clause to a bond hearing. (Doc. 4 at 9–13.) The Court disagrees. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but [who was] stranded in his temporary haven on Ellis Island because other countries [would] not

4

take him back." 345 U.S. at 207. "In 1950, the Attorney General determined, pursuant to emergency regulations [ ] based on certain confidential information, [that] the noncitizen should be excluded from the United States 'for security reasons.'" *Lastin v. Warden*, Case No.: 26-cv-974-RSH-DDL, 2026 WL 575902, at *3 (S.D. Cal. Mar. 2, 2026) (discussing *Mezei*). The Supreme Court rejected the noncitizen's constitutional challenge, citing "considerations" of "danger to the national security."

> Thus we do not think that respondent's continued exclusion deprives him of any statutory or constitutional right. It is true that resident aliens temporarily detained pending expeditious consummation of deportation proceedings may be released on bond by the Attorney General whose discretion is subject to judicial review. By that procedure aliens uprooted from our midst may rejoin the community until the Government effects their leave. *An exclusion proceeding grounded on danger to the national security, however, presents different considerations;* neither the rationale nor the statutory authority for such release exists. *Ordinarily to admit an alien barred from entry on security grounds nullifies the very purpose of the exclusion proceeding . . . .*

*Mezei*, 345 U.S. at 215 (citations omitted and emphasis added).

The Court agrees with those courts that distinguish the constitutional holding in *Mezei* as addressing the national security considerations presented in that case. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Lett v. Decker*, 346 F. Supp. 3d 379, 386 (S.D.N.Y. 2018) ("*Mezei* may compel the conclusion that arriving aliens already excluded on national security grounds are not entitled to a bond hearing prior to their arranged deportation. However, *Mezei* does not compel the categorical conclusion that all arriving aliens may be subject to prolonged confinement without a bond hearing."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to the issue of whether prolonged detention without a bond hearing violates due process); *Rash v. LaRose*, Case No.: 26-cv-00008-LL-DEB, 2026 WL 249324, at *4 (S.D. Cal. Jan. 30, 2026) (same). "Here, in contrast, neither the Attorney General nor any other government component has made a determination that Petitioner should be excluded on

grounds of national security; Petitioner is not seeking to circumvent such a determination. Petitioner is instead seeking a bond hearing." *Lastin*, 2026 WL 575902, at \*3.  The Court thus concludes that it may consider whether Petitioner's detention has become unconstitutionally prolonged.

**B.      Prolonged Detention**

To determine whether Petitioner's detention has become unconstitutionally prolonged under § 1225(b), the Court applies the six-factor balancing test set forth in *Kydyrali.  See* 499 F. Supp. 3d at 773.  Under this test, the Court considers:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Gao*, 805 F. Supp. 3d at 1111.

As to the first factor, which has been described as "the most important," *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019), Petitioner has been detained for about 14 months.  (*See* Doc. 4 at 4.)  Respondents argue that "Petitioner's detention of fourteen months falls significantly short of the length courts have found to raise due process concerns."  (Doc. 4 at 14 (collecting cases finding detention unreasonably prolonged after two to three years).)  As another court in this District noted, though, "[c]ourts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable." *Abdul Kadir v. Larose*, Case No.: 25cv1045-LL-MMP, 2025 WL 2932654, at \*5 (S.D. Cal. Oct. 15, 2025) (collecting cases and finding that a nearly 13-month detention weighed in favor of the petitioner); *see also Sibomana v. LaRose*, Case No.: 3:22-cv-933-LL-NLS, 2023 WL 3028093, at \*4 (S.D. Cal. Apr. 20, 2023) ("In general, as detention continues past a year, courts become extremely way of permitting continued custody absent a bond hearing.").  The Court finds that this factor favors Petitioner.

As to the second factor, Petitioner's merits hearing is scheduled for April 22, 2026, and the outcome of that hearing, along with the amount of time it would take to resolve

6

3:26-cv-01116-RBM-MMP

any appeal, is unknown.  (Doc. 4 at 5.)  The Court finds that the "undetermined, but likely significant, period of mandatory detention through the appeals process" weighs in favor of Petitioner.  *Gao*, 805 F. Supp. 3d at 1111; *accord Abdul Kadir*, 2025 WL 2932654, at *5; *Masood v. Barr*, Case No. 19-cv-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("The BIA appeal . . . [is a] perfectly legitimate proceeding[] he is legally entitled to pursue," and the respondents "cannot predict with any degree of confidence when the BIA appeal will be resolved," which "could lead to further proceedings that might take up many more months, or even years.").

As to the third factor, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."  *Banda*, 385 F. Supp. 3d at 1119 (citation omitted).  Petitioner spent most of the 14 months of his immigration detention at Otay Mesa Detention Center, and was transferred to California City Detention Facility days after filing his Petition.  (*See* Doc. 7-1 [Declaration of Deportation Officer Daniel Negrin] ¶ 4.)  As multiple courts have found, detention at Otay Mesa Detention Center is "indistinguishable from penal confinement."  *Kydyrali*, 499 F. Supp. 3d at 773 (citation omitted).  Courts have considered evidence suggesting the same is true of California City Detention Facility.  *See Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1200–1201 (E.D. Cal. 2025).  Therefore, this factor weighs in Petitioner's favor.

The fourth and fifth factors are neutral because both Petitioner and Respondents have caused delays in the removal proceedings.  (*See supra* Section I.A).  The sixth factor is also neutral because Petitioner's applications for asylum, withholding of removal, and relief under the Convention Against Torture have not yet been adjudicated.  (*See* Doc. 4 at 5.)

Three factors, including "the most important one," weigh in Petitioner's favor, and none weigh against him.  Therefore, the Court finds that Petitioner's detention under § 1225(b) has become unreasonably prolonged and that due process requires that he be provided with a bond hearing.  In light of this finding, the Court declines to reach the remaining grounds for relief raised in the Petition.

3:26-cv-01116-RBM-MMP

## IV.    CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**.  Respondents are **ORDERED** to arrange an individualized bond hearing for Petitioner before an immigration judge within **fourteen (14) days** of entry of this Order to determine whether his continued detention is warranted.  Respondents shall bear the burden of establishing, by clear and convincing evidence,[2] that Petitioner poses a danger to the community or a risk of flight.  If no hearing occurs **within fourteen (14) days** of entry of this Order, Petitioner shall be released from Respondents' custody.  On or before **April 16, 2026**, Respondents **SHALL FILE** a status report indicating whether and when Petitioner received a bond hearing, and the outcome of that bond hearing.

**IT IS SO ORDERED.**

DATE:  March 26, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2] *See Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1095 (S.D. Cal. 2025) ("Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond").

8

3:26-cv-01116-RBM-MMP